IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO: 20-cv-10996

EDWARD DIMARIA,

      Petitioner,

vs.

STEPHEN SPAULDING, Warden,
Federal Medical Center, Devens

      Respondent.
_____/

# EMERGENCY PETITION
# FOR HABEAS CORPUS UNDER 28 U.S.C. § 2241

1. Movant Edward DiMaria, who is incarcerated at the Federal Medical Center (FMC) Devens in Ayers, Massachusetts, and whose U.S. Marshal's number is 16900-104, respectfully submits this petition for habeas corpus relief under 28 U.S.C. § 2241 and an immediate bail hearing, and further states:

## INTRODUCTION

2. The proliferation of COVID-19 infection throughout the federal prison system—with more than 5,000 BOP inmates and staff infected so far this year—has hit particularly hard at FMC Devens, where as of today, 21 inmates at FMC Devens are infected

with, and have not recovered from, the virus (along with two staff members).[1] In addition, one FMC Devens inmate has already died.[2] The actions taken and proposed by the BOP in response to the COVID-19 pandemic at FMC Devens, particularly its failure to release a sufficient number of inmates to make effective social distancing within the facility possible, guarantee that the infection will remain rampant, so that inmates such as Edward DiMaria—who suffers from specific health risk and comorbidity factors—will remain at unacceptably grave risk of serious disease and death.

3. Bureau of Prisons authorities know that social distancing is the principal prescribed method for reducing the risk of transmission of the deadly coronavirus, and that decarceration or "decompression" strategies are the most effective means of protecting inmates and staff, so that effective social distancing might be possible. Bureau of Prisons authorities have been instructed by the Attorney General to employ these strategies with dispatch, have been sued on multiple fronts, and yet have failed to meaningfully respond. Prompt judicial intervention is necessary to protect the Petitioner from being subjected to an inhumane risk to his life from which he is unable to effectively protect himself.

---

[1] See https://www.bop.gov/coronavirus/

[2] See 2020 WL 2111874 (May 4, 2020 BOP news release regarding death of DMC Devens inmate).

**Jurisdiction**

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241. Venue is proper under 28 U.S.C. § 1391 because the petitioner is located in this District. An actual and justiciable controversy exists between the parties this Court has authority to grant declaratory and injunctive relief. See 28 U.S.C. § 1651. Further, the Court has subject matter jurisdiction over this action pursuant to Article I, § 9, cl. 2 of the U.S. Constitution (Suspension Clause), the Fifth and the Eighth Amendments to the U.S. Constitution, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1651 (All Writs Act). In addition, the Court has authority to grant injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

**Parties**

5.      Petitioner Edward DiMaria, 54, is in custody as a federal inmate at the FMC Devens Camp. He suffers from hypertension, and is therefore at elevated risk of experiencing serious COVID-19 disease and death due to COVID-19. He is a non-violent, first-time, white collar offender serving a ten-year prison sentence with a projected release date of April 2, 2027. He has formally requested home detention, citing the Attorney General's guidance, and has been denied.

6.      Respondent Stephen Spaulding is the Warden of FMC Devens.

**FACTUAL ALLEGATIONS**

7. COVID-19 is a highly contagious disease that is easily transmitted through respiratory droplets, especially when one is within six feet of an infected individual. Completely asymptomatic individuals can transmit the coronavirus to others who can then become infected with COVID-19, with resulting effects that may include respiratory failure, kidney failure, or death[3]. Infected individuals who do not die from the disease can face serious damage to the lungs, heart, liver, or other organs, resulting in prolonged recovery periods, including extensive rehabilitation from neurological damage and loss of respiratory capacity.

8. COVID-19 is a new disease about which new information develops daily. It affects some individuals not at all--they may be asymptomatic carriers--produces mild to moderate symptoms for others, and for some significant portion of sufferers it leads to serious disease and death. The CDC states that the elderly and those certain medical conditions are known to face greater chances of serious illness or death from COVID-19.[4]

9. Petitioner, who suffers from hypertension, and has a history of heart syncope, loss of consciousness associated with hypertension, elevated risk of stroke and heart attack, falls into this category.

10. It is also believed that serious COVID-19 symptoms can result in lasting harm, even if they do not result in death. COVID-19 can severely damage lung tissue, affect cardiac

---

[3] James Hamblin, Why Some People Get Sicker Than Others, The Atlantic (Apr. 21, 2020), https://www.theatlantic.com/health/archive/2020/04/coronavirus- immune-response/610228/

[4] See Centers for Disease Control, "People Who Are at Higher Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ groups-at-higher-risk.html

functions, and cause widespread damage to other organs. These complications can manifest at an alarming pace. Patients can show the first symptoms of infection in as little as two days after exposure, and their condition can seriously deteriorate in as little as five days or sooner.

11. There is no vaccine against COVID-19, nor is there any known medication to prevent or cure infection from the virus. The principal effective measure to reduce the spread of coronavirus is social distancing or remaining physically separated from known or potentially infected individuals. This danger cannot meaningfully be mitigated by a prisoner in group living conditions, even with the best efforts of the inmate to maintain hygienic practices.

12. The self-help measures available to the population at large, such as staying at home, are unavailable to the petitioner at FMC Devens.

13. In response to the pandemic, many state and federal authorities have noted the danger that is inherent in congregate environments such as prisons, and strenuously urged and implemented decarceration or decompression strategies.

14. The Attorney General of the United States has issued two memorandums directed to the BOP, which urged it to release as many inmates as possible to home detention, consistent with safety and other concerns, and suggested criteria for evaluation which defendants may be released.

15. The prison's present plan is to test inmates for the virus, wait five or more days for results, and then house known infected inmates in temporary shelters (tents) set up outdoors on the prison compound, thereby maximizing the degree of infection among any who test positive, while maintaining asymptomatic transmission pending and after initial test results.

16. Petitioner applied for release to home detention in light of the Attorney General's prescriptions, but was denied. Petitioner believes the denial is due to the fact that he has served 20% of his effective sentence, and not a greater portion.

17. Petitioner is a first-time, non-violent offender, who entered a guilty plea to charges pertaining to his responsibility for accounting work as the Chief Financial officer of Bankrate, a publicly traded company. Notably, although an independent auditor for the company, which included forensic accountants, concluded that none of the questioned accounting entries, either individually or in the aggregate, were materially inaccurate and that no fraud or criminal activity had occurred, petitioner's guilty plea was accepted and he surrendered to begin service of his 120-month sentence in 2018.

18. Because he presents no community risk if released, and because the denial of his administrative requests, which were fully supported by relevant guidelines and congressional directives, reflect the deliberate exposure of the petitioner to heightened and severe risks of infection, the challenged actions by the Respondent are actionable. Petitioner has been denied administrative relief by the respondent, and the emergency condition compels the filing of this petition.

19. Demonstrating the wilful failure to act appropriately to avoid infection harms, FMC Devens has failed to follow the directive of the Attorney General of the United States that the home confinement framework of the CARES Act be "maximized." Instead, at FMC Devens, the remedial efforts to which the Attorney General referred have been minimized by systemic process that frustrate relief and arbitrarily lower the number of people being granted

home confinement. This deliberate action substantially and unnecessarily increases their risk to the petitioner.

20. Petitioner is an ideal candidate for release under any conditions. He has no discipline history in 20 months of incarceration (and also no issues while on pre trial release); the release plan submitted to FMC Devens (to live with his wife at their home on a confinement basis) was clearly acceptable; his corporate management offense—which came down to managing the reporting of earnings by using purportedly disfavored accounting techniques—clearly does not involve drugs, violence, sex, terrorism, or any form of criminal livelihood; he as no detainers; the BOP recognizes his status by placing him in a minimum security where he has a minimum pattern score, establishing his "priority" status; he is over 50 years of age and has underlying health conditions (described above) which substantially elevate his risk for serious, life-threatening, consequences of COVID 19 infection under CDC analyses.

21. The present testing at FMC Devens, and the 70% positive findings for testing already done by the BOP throughout the nation, indicate that 5,000-infected number in the system is surely an undercount, because the BOP is apparently just beginning widespread testing of inmates.[5] Clearly, U.S. prisons and jails are COVID-19 "hot spots."[6]

---

[5] See Statement of Senator Durbin and Senator Chuck Grassley to DOJ Inspector General Michael Horowitz (Apr. 21, 2020), available at https://www.durbin.senate.gov/imo/media/doc/ DOJ%20IG%20COVID19%20BOP %20letter%20final%20signed.pdf (expressing "worry that BOP is significantly underestimating the rate of COVID-19 infection in BOP facilities because BOP has not yet conducted the number of tests on staff or inmates appropriate for facilities where a highly contagious virus can be easily spread"); see also Joseph Neff, "Why Did It Take the Feds Weeks to Report COVID-19 Cases In Privately Run Prisons?," The Marshall Project (May 8, 2020), available at https://www.themarshallproject.org/2020/05/08/why-did-it-take-

22. The measures taken by FMC Devens with regard to the pandemic have merely increased the vulnerability of the petitioner. There has been a failure to reduce overcrowding through release or transfer of vulnerable inmates; a failure to allow for social distancing; a failure to maintain hygiene or adequate means for inmates to do so; a failure to provide adequate, effective, and timely screening, testing, and tracing; and a concomitant failure to isolate and treat those suffering from COVID-19.

## GROUNDS WARRANTING RELIEF

### Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment

23. Section 2241 authorizes courts to grant habeas corpus relief where, inter alia, a person "is in custody in violation of the Constitution … of the United States," 28 U.S.C. § 2241(c)(3), including due to the conditions of confinement.

---

the-feds-weeks-to-report-covid-19-cases-in-privately-run-prisons (detailing delay and likely undercount regarding COVID-19 in privately-run federal prisons).

6 *See* Justin Carrisimo, "CDC report details extent of coronavirus outbreaks in U.S. jails and prisons," CBS News (May 6, 2020), available at https://www.cbsnews.com/news/coronavirus-outbreaks-jails-prisons-cdc-report-covid-19/ ("Jails and prisons, where social distancing is nearly impossible, have emerged as hotspots for COVID-19."); C.J. Ciaramella, "8 of The Top 10 Biggest U.S. Coronavirus Hotspots Are Prisons and Jails," Reason (Apr. 29, 2020), available at https://reason.com/2020/04/29/8-of-the-top-10-biggest-u-s-coronavirus-hotspots-are-prisons-and-jails/ (analyzing NYTimes data); Timothy Williams & Danielle Ivory, "Chicago's Jail Is Top U.S. Hot Spot as Virus Spreads Behind Bars," New York Times (Apr. 23, 2020), available at https://www.nytimes.com/2020/04/08/us/coronavirus-cook-county-jail-chicago.html ("The jail in Chicago is now the nation's largest-known source of coronavirus infections.").

24. There is no doubt that "§ 2241 is the proper vehicle for an inmate to challenge 'the fact or length of confinement,' *Presser v. Rodriguez*, 411 U.S. 475, 494 (1973), or the 'execution' of the confinement. *Woodall v. Fed. BOP*, 432 F.3d 235, 241–42 (3d Cir. 2005)." *United States v. Serfass*, No. CR 3:15-39, 2020 WL 1874126, at *1 (M.D. Pa. Apr. 15, 2020) (concluding that § 2241 is appropriate vehicle to pursue relief from COVID-19 hazards imposed by federal prison, and that the district in which the inmate is confined is the appropriate venue)

25. The court in *Baez v. Moniz* recently held that § 2241 is the proper procedural vehicle to bring such a claim. "Order on Motions to Dismiss," ECF 64, 20-cv-10753-LTS, 05/18/2020 (holding "in the extraordinary circumstances presented by the COVID-19 pandemic, the Court finds that the petitioners' claims sound in habeas, and this Court has jurisdiction to consider them under § 2241" *and citing, inter alia, Savino v. Souza*, No. 20-cv-10617-WGY, ECF No. 175 (D. Mass. May 12, 2020)); *Putnam v. Winn*, 441 F. Supp. 2d 253, 259 (D. Mass. 2006) (granting § 2241 relief to FMC Devens inmate and directing that "BOP reconsider Putnam's [halfway house] placement in good faith in accordance with [applicable] standards").

26. The U.S. Constitution guarantees inmates the right to be free from conditions of confinement that pose an excessive risk to their health or safety. Respondent has subjected petitioner to conditions of confinement that pose an excessive risk to his health and safety. Respondent has acted with deliberate indifference to the right of petitioner to be free from conditions of confinement that pose an excessive risk to health and safety, by recklessly failing

to act with reasonable care to mitigate the risk of COVID-19 to petitioner even though respondent knew or should have known about the risks of COVID-19.

27. Respondent has subjected petitioner to conditions of confinement that increase the risk of contracting COVID-19, for which there is no known vaccine or cure, even though respondent knew or should have known that the conditions at the institution exposed petitioner to a substantial and unreasonable risk of illness and death. As a result of respondent's unconstitutional actions and inaction, petitioner is suffering, and will (unless remedied) continue to suffer, irreparable injury.

28. The failure to FMC Devens to release Petitioner in the context of an over-all decarceration plan, and decision to rely on inconsistently applied and cosmetic remedial measures instead, inmates violates petitioner's rights under the Eighth Amendment to the U.S. Constitution, which protects convicted persons from the infliction of cruel and unusual punishment. Society does not tolerate the risk of exposure to COVID-19 to which respondent's policies, procedures, and practices (or lack thereof) have subjected petitioner. It violates contemporary standards of decency to expose him unwillingly to this risk.

29. Respondent knows that petitioner suffers a substantial and unreasonable risk of serious harm to health and safety due to the presence of, and spread of, COVID-19 within the institution. Respondent has acted with deliberate indifference towards petitioner by knowingly subjecting him to conditions of confinement that increase the risk of contracting COVID-19, a disease for which there is no known vaccine or cure. Respondent's detention of petitioner in the above-described conditions of confinement has failed to protect him adequately from the

risks of contracting COVID-19. As a result of respondent's unconstitutional actions and inaction, petitioner is suffering, and will (unless remedied) continue to suffer, irreparable injury.

**REQUEST FOR RELIEF**

For all of the reasons expressed in this petition, Edward DiMaria prays that the Court will grant him relief from the unconstitutional confinement, grant him an evidentiary hearing, and <u>grant him an immediate bail hearing during the pendency of this action</u>.

Respectfully submitted,
EDWARD DIMARIA,
By his attorney,


<u>/s/Ian Gold</u>
Ian Gold (BBO# 665948)
185 Devonshire Street, Suite 302
Boston, MA 02110
(617) 297-7686 (office & mobile)
ian.gold@iangoldlaw.com

Date: May 22, 2020