# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD DIMARIA,<br><br>        Petitioner,<br><br>v.<br><br>STEPHEN SPAULDING,<br>Warden of Federal Medical Center Devens,<br><br>        Respondent. | Civil Action No. 20-cv-10996-GAO |

## RESPONDENT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241[1]

## INTRODUCTION

The Bureau of Prisons ("BOP") and the Federal Medical Center in Devens, Massachusetts ("FMC Devens") have taken extensive measures to prevent and treat COVID-19 among inmates. Despite these substantial efforts, Petitioner Edward DiMaria ("Petitioner") has filed an *Emergency Petition for Habeas Corpus Under 28 U.S.C. § 2241* ("Petition") in which he seeks an immediate bail hearing and release to home confinement to serve the remainder of his sentence. ECF No. 1 at ¶¶ 1, 20. Petitioner claims that the conditions of incarceration at FMC Devens are conducive to the spread of COVID-19, and because he is a 54 year old male who suffers from hypertension, with a history of heart syncope, loss of consciousness associated with hypertension, and an

---

[1] Petitioner Petitioner raises substantially the same claims as those pending before the district court in the case of *Grinis et al. v. Spaulding et al.*, Civil Action No. 20-cv-10738-GAO (D. Mass.), and in fact submits some of the same exhibits that were filed by petitioners in *Grinis*. A motion to consolidate this case with *Grinis* is pending. ECF No. 7. Accordingly, this motion and memorandum of law seeking dismissal of the Petition closely tracks (and repeats) many of the arguments contained in the government's omnibus response filed in that case. *See Grinis*, Civil Action No. 20-cv-10738-GAO, ECF No. 32.

elevated risk of stroke and heaert attack, his age and underlying medical conditions place him at an elevated risk for contracting the virus. *Id*., at ¶¶ 5, 9.

Respondent moves for dismissal of Petitioner's Petition, which is without merit and fails on several grounds. *First*, Petitioner's challenge to conditions of his confinement by a habeas petition under 28 U.S.C. § 2241 is improper. *Crooker v. Grondolsky*, No. 12-12106-GAO, 2013 WL 101588, at *2 (D. Mass. Jan. 4, 2013); s*ee also Nelson v. Campbell*, 541 U.S. 637, 643 (2004). *Second*, the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, places strict limitations on a court's ability to order the release of inmates "in any civil action in Federal court with respect to prison conditions …" and precludes a single district judge from doing so, as Petitioner requests. 18 U.S.C. § 3626(a)(3)(B). *Third*, Petitioner cannot establish the facts that form the basis of his Petition. As explained further, *infra*, FMC Devens has taken appropriate steps to mitigate the risk of COVID-19 throughout its inmate population, including implementing the BOP's national response to prevent the introduction and spread of COVID-19 into the BOP, and implementing a number of other measures at FMC Devens including providing inmate and staff education; conducting inmate and staff screening; putting into place testing, quarantine, and isolation procedures in accordance with BOP policy and CDC guidelines; ordering enhanced cleaning and medical supplies; and taking a number of other preventative measures.

For these reasons, as more fully set forth below, Respondent asks this Court to dismiss the Petition.

## STATEMENT OF FACTS

### I. THE COVID-19 PANDEMIC AND BOP'S RESPONSE

The Federal Bureau of Prisons ("BOP") has been monitoring and tracking the spread of COVID-19 since January 2020 when the first cases of the virus appeared in the United States. *See*

Declaration of Megan Shaw, M.D. ("Shaw Decl.") at ¶ 6, attached hereto as Exhibit A. Recognizing the threat that this virus could pose to its inmate population, the BOP began quickly organizing its national pandemic response into a multiphase "Action Plan," implementing a variety of protocols in response to the rapidly shifting landscape of this pandemic across the United States.[2] Some of the measures that the BOP has taken, on a nationwide basis, include implementing screening requirements for inmates and staff; temporarily suspending social visits, legal visits, inmate transfers, official travel, and contractor access; updating its quarantine and isolation procedures; and instituting a "modified operations" plan, which directs BOP facilities to adjust their daily operations in a manner that permits inmates to engage in physical distancing while in common areas, such as during mealtimes and recreation. *Id*.

On March 31, 2020, the BOP ordered all inmates to remain secured in their assigned cells or quarters for a period of 14 days (to be re-evaluated at the conclusion of that time period) in order to decrease the spread of the virus. Shaw Decl. ¶ 16. On April 13, 2020, the BOP ordered an extension of the April 1, 2020 modified operations order through May 18, 2020. Shaw Decl. ¶ 17. The BOP has begun additional testing of asymptomatic inmates to assist in slowing transmissions within the correctional setting. *See* https://www.bop.gov/coronavirus/ (last visited June 1, 2020).

## II. STEPS BEING TAKEN AT FMC DEVENS TO PREVENT COVID-19

FMC Devens is an Administrative security level institution designed to house approximately 1,200 inmates at the main facility and approximately 128 inmates at the adjacent Federal Prison Camp ("FPC"). *See* Declaration of Amber Bourke ("Bourke Decl."), attached

---

[2] These protocols are discussed at length in Dr. Shaw's Declaration. *See* Ex. A.

hereto as Exhibit B, at ¶ 24.  The main Federal Medical Center ("FMC") facility and the FPC are separate facilities, and the inmate populations do not interact.[3]  *Id*.

In addition to implementing BOP's national action plan, in compliance with BOP's national directives, FMC Devens has also taken numerous other measures to fight the introduction and spread of COVID-19 within its facilities including providing inmate and staff education; conducting inmate and staff screening; putting into place testing, quarantine, and isolation procedures in accordance with BOP policy and CDC guidelines; ordering enhanced cleaning and medical supplies; and taking a number of other preventative measures.  Shaw Decl. ¶ 19.  As of May 31, 2020, 43 inmates and 4 FMC Devens staff tested positive for COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visited June 1, 2020).[4]

From the outset of the COVID-19 pandemic, FMC Devens officials have provided regular updates to inmates and staff regarding the virus and BOP's response, and have educated inmates and staff regarding measures that they should take to stay healthy.  Shaw Decl. ¶ 20.  The measures that FMC Devens has taken to insure the health and safety of its staff and inmates include measures to insure inmate screening and social distancing, modification of health services, development of isolation and quarantine procedures, testing in accordance with CDC guidelines, screening of staff

---

[3] "FMC Devens" refers to both the FMC and the FPC, unless otherwise stated.

[4] The BOP updates its statistics concerning open COVID-19 positive test numbers, recoveries, and the number of COVID-19 related deaths each day at 3:00 p.m. based upon confirmed lab requests involving open cases as reported by BOP's Office of Occupational Health and Safety.  *See* https://www.bop.gov/coronavirus/ (last visited June 1, 2020).

and visitors, extensive cleaning, requiring all inmates and staff to wear masks at all times, and providing inmates and staff with personal protective equipment ("PPE").[5]

Additionally, Health Services staff developed a tool to identify the high-risk inmates per the CDC website definition (https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html) and are screening these inmates for referral to Expanded Home Confinement in conjunction with the Unit Team. Shaw Decl. ¶ 57. This analysis includes education and collaboration between the inmate and his medical provider on whether his risks for COVID-19 are greater at home or at the institution. *Id*.

### III. HOME CONFINEMENT

Since the Attorney General's direction to the BOP on March 26, 2020, instructing the BOP to prioritize home confinement as a response to the COVID-19 pandemic, nationally the BOP has placed an additional 3,544 inmates on home confinement, a significant increase of 124%, and BOP continues to screen all inmates to determine whether they are appropriate for home confinement.[6]

By memoranda dated March 26, 2020, and April 3, 2020, the Attorney General directed the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." *See* Attorney General Memoranda dated March 26, 2020 (Exhibit C) and April 3, 2020 (Exhibit D), attached hereto. In assessing which inmates should be granted home confinement, the Attorney General directed the BOP to consider the totality of the circumstances of each inmate, the statutory

---

[5] A detailed description of the efforts the FMC Devens has taken to prevent the introduction and spread of COVID-19 at FMC Devens is set forth in the declarations attached as Exhibits A and B.

[6] *See* https://www.bop.gov/coronavirus/ (last visited June 1, 2020).

requirements for home confinement, and a series of factors including the age and vulnerability of the inmate, the security level of the facility holding the inmate, the inmate's conduct while incarcerated, the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Needs, whether the inmate has a demonstrated and verifiable reentry plan that will prevent recidivism and ensure public safety (including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face at their current facility), and the inmate's crime of conviction. Exhibit C, at 1-2. In addition to these factors, before granting an inmate release on home confinement, the Attorney General directed the BOP Medical Director, or his designee, "to make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement." *Id*. at 2. FMC Devens is following this guidance. Shaw Decl. ¶ 57.

Although BOP lacks the authority to release an inmate from his sentence, BOP has the authority to transfer a prisoner to home confinement for the remainder of his or her sentence pursuant to provisions and limitations set forth 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. *See* Bourke Decl. ¶ 3; *see also* BOP Program Statement 7320.01, *Home Confinement* and BOP Operations Memorandum, *Home Confinement under the First Step Act*. Generally, the BOP may place a prisoner in home confinement only for the shorter of 10 percent of the term of imprisonment or 6 months. 18 U.S.C. § 3624(c)(2). Pursuant to the Attorney General's directives in light of the COVID-19 pandemic, the BOP began immediately reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention ("CDC"), to determine which inmates are suitable for home confinement. *Id*.

Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), signed into law on March 27, 2020, however, "if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement." Pub. L. No. 116-136, 516 § 12003(b)(2), 134 Stat. 281 (2020). On April 3, 2020, the Attorney General made that finding and authorized the Director of BOP to immediately maximize appropriate transfers to home confinement of all appropriate inmates where COVID-19 is materially affecting operations. Exhibit D at 1; Bourke Decl. ¶ 8. In light of the COVID-19 pandemic, BOP is maximizing its authority to place inmates on home confinement and is expediting the process as much as possible in furtherance of the Attorney General's memorandum dated March 26, 2020, and April 3, 2020. Bourke Decl. ¶ 14.

Pursuant to the Attorney's General's direction, FMC Devens receives rosters of inmates to be considered for home confinement. Bourke Decl. ¶ 25. In addition to the established guidance and the discretionary factors that BOP may consider in evaluating an inmate for home confinement,[7] and in order to prioritize its limited resources, BOP has generally prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences. Bourke Decl. ¶ 19. While these priority factors are subject to deviation in BOP's discretion in certain circumstances, and are subject to revision as the situation progresses, BOP is at this time prioritizing for consideration those inmates who either (1) have served 50% or more of their sentences, or (2) have 18 months or less remaining in their sentences and have served 25% or more of their sentences. *Id*.

---

[7] The Declaration of Amber Bourke discusses more extensively the guidance governing consideration of an inmate for home confinement. *See* Bourke Decl. at ¶¶ 3-21; 24-25.

7

Because Petitioner has served approximately 30% of his sentence, *see* ECF No. 1 at ¶ 5, he is ineligible for compassionate release to home confinement based on the factors considered by the BOP pursuant to the current directives and guidelines.

**ARGUMENT**

I. **PETITIONER IS NOT ENTITLED TO HABEAS RELIEF**

   A. Habeas Relief Is Unavailable To Challenge Conditions Of Confinement

The gravamen of Petitioner's Petition is that he is entitled to habeas relief pursuant to 28 U.S.C. § 2241 due to his high risk of contracting COVID-19 by virtue of the fact that he is incarcerated and is a 54 year old male with underlying medical conditions. ECF No. 1 at ¶¶ 5, 9. Petitioner's conditions of confinement claims are not properly brought by the Petition, and must be dismissed.

The traditional meaning and purpose of habeas relief is to effect release from illegal custody. *Johnson v. Moran,* 812 F.2d 23, 24 (1st Cir. 1987) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 486 n.7 (1973)). "As a general matter, a petition for habeas corpus is the appropriate means to challenge the fact or duration of incarceration, while challenges to the conditions of confinement are generally brought as civil rights claims under *Bivens*." *Graham v. Sabol*, 734 F.Supp.2d 194, 204 (D. Mass. 2010) (citing *Sanchez v. Sabol*, 539 F.Supp.2d 455, 459 (D. Mass. 2008); *Kane v. Winn*, 319 F.Supp.2d 162, 213 (D. Mass. 2004); *Kamara v. Farquharson*, 2 F.Supp.2d 81, 89 (D. Mass. 1998)); *see also Sperling v. Grondolsky,* No. 17-12075-PBS, 2018 WL 1904177, at *2 (D. Mass. Apr. 20, 2018) (typically a *Bivens* action is the appropriate means for a federal prisoner to challenge the adequacy of his medical treatment). Indeed, "judges of this Court repeatedly have held that the failure to provide adequate medical treatment is not the proper subject of a petition for a writ of habeas corpus." *Crooker v. Grondolsky*, No. 12-12106-GAO, 2013 WL 101588, at

8

*2 (D. Mass. Jan. 4, 2013); s*ee also Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (constitutional claims challenging confinement conditions fall outside of the core of habeas relief); *Grinis v. Spaulding,* Civil Action No. 20-cv-10738-GAO (D. Mass. May 8, 2020), ECF No. 45 (substantial question exists whether relief petitioners sought was properly brought by means of habeas petition under § 2241).

Because a petition for writ of habeas corpus is not the proper means by which to bring a conditions of confinement claim, this Court lacks jurisdiction to order habeas relief for Petitioner, and the Petition should be dismissed. *Warner v. Spaulding,* Civil Action No. 18-cv-10850-DLC, 2018 WL 9838349, at *1 (D. Mass. Sept. 24, 2018) (dismissing petition, citing *Muhammad v. Close,* 540 U.S. 749, 750 (2004) (per curiam) (request for relief turning on circumstances of confinement may be presented in a non-habeas action)); *see also McLaughlin v. MacDonald,* Civil Action No. 11-11587-JLT, 2012 WL 4058063, at *5 (D. Mass. Aug. 22, 2012) (dismissing claims alleging inadequate medical treatment brought as habeas action); *Kamara*, 2 F.Supp.2d at 89 (dismissing petition, finding that a challenge to conditions of confinement on grounds of inadequate medical treatment should have been brought as a civil rights action); *Bedford v. Wall,* No. C.A.04-527L, 2005 WL 775904, at *2 (D. R.I. Mar. 31, 2005) (court may consider only unlawful custody claims raised by petition).

    B.    <u>The PLRA Precludes The Relief That Petitioner Seeks</u>

By his Petition, Petitioner improperly seeks release to home confinement. The Prison Litigation Reform Act of 1995 ("PLRA"), 18 U.S.C. § 3626, places strict limits on a court's ability to order the release of an inmate "in any civil action in Federal court with respect to prison conditions…" and, in fact, precludes a single district judge from doing so, as Petitioner requests. 18 U.S.C. § 3626(a)(3)(B); *see also Vaqueria Tres Monjitas, Inc. v. Comas,* 980 F.Supp.2d 65,

117 n.33 (D. Puerto Rico Sept. 23, 2013) (the PLRA's authority to release prisoners to cure a "systemic violation of the Eighth Amendment" is reserved to a three-judge district court).

The PLRA applies to "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison[.]" 18 U.S.C. § 3626(g)(2). In such a suit, the court "may enter a temporary restraining order or an order for preliminary injunctive relief," but such injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Under the PLRA, a "prisoner release order" – which "includes any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison," 18 U.S.C. § 3626(g)(4) – may "be entered only by a three-judge court," 18 U.S.C. § 3626(a)(3)(B), and then only if certain conditions have been met. Among other requirements, "no court shall enter a prisoner release order unless – (i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and (ii) the defendant has had a reasonable amount of time to comply with the previous court orders." 18 U.S.C. § 3626(a)(3)(A)(i)(ii). *See, generally, Brown v. Plata,* 563 U.S. 493 511-512 (2011) (setting forth the requirements of the PLRA, and holding that only a three-judge court may enter an order limiting prison population after finding by clear and convincing evidence that crowding is the primary cause of the constitutional violation, and only after a district court has first entered an order for less intrusive relief).

Congress enacted "the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management." *Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 655 (1st Cir. 1997) (citations omitted); *see also Benjamin v. Jacobson*, 172 F.3d 144, 182 (2d Cir. 1999) (en banc) (Calabresi, J., concurring) ("The in banc majority argues at length that Congress meant to get the federal courts out of the business of running jails, and it cites any number of congressional statements to that effect. I agree."); *Denike v. Fauver,* 3 F.Supp.2d 540, 542 (D. New Jersey May 4, 1998) (purpose of PLRA is to reduce federal judicial involvement in prison administration). "Congress intended the PLRA to revive the hands-off doctrine," which was "a rule of judicial quiescence derived from federalism and separation of powers concerns." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 991, 997 (9th Cir. 2000). "Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals." *Brown*, 563 U.S. at 511 (2011). Section 3626 thus "restrict[s] the equity jurisdiction of federal courts," *Gilmore*, 220 F.3d at 999, and, "[b]y its terms . . . restricts the circumstances in which a court may enter an order 'that has the purpose or effect of reducing or limiting the prison population.'" *Plata*, 563 U.S. at 511 (quoting 18 U.S.C. § 3626(g)(4)). The PLRA's "requirements ensure that the 'last remedy' of a population limit is not imposed 'as a first step.'" *Id.* at 514 (quoting *Inmates of Occoquan v. Barry*, 844 F.2d 828, 843 (D.C. Cir. 1988)). "The release of prisoners in large numbers . . . is a matter of undoubted, grave concern." *Id.* at 501.

Here, not only does the PLRA preclude the relief that Petitioner seeks, but even if this Court were inclined to grant such relief, his request is premature. From the outset, Petitioner seeks release from this Court, contrary to the requirements of the PLRA that any such relief must be

granted by a three-judge panel. Next, he seeks release without this Court having entered any other less intrusive order. On these grounds alone, the Petition must be denied.

Here, there can be no dispute that Petitioner's Petition is a "civil action with respect to prison conditions" governed by the PLRA. 18 U.S.C. § 3626(g)(2). The PLRA defines "civil action with respect to prison conditions" broadly to mean "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but [that term] does not include habeas corpus proceedings challenging the fact or duration of confinement in prison[.]" *Id.* Petitioner seeks release as a remedy for what he alleges is a high risk of contracting COVID-19 at FMC Devens. As set forth above, the PLRA strictly limits the relief that this Court may grant and precludes the Court from releasing him from FMC Devens as he requests. 18 U.S.C. § 3626(a)(3)(B). Accordingly, this Court must deny the Petition.

C.   The Petition Fails To State A Claim Upon Which Relief May Be Granted

Petitioner's Petition fails to state a claim against Respondent, merely alleging that he is at high risk of contracting COVID-19. On this basis alone, the Petition must be denied.

To be sure, the spread of COVID-19 within the United States puts everyone at some degree of risk of getting sick, but FMC Devens has taken appropriate steps to mitigate those risks throughout its inmate population.[8] As set forth above, those measures include providing inmate

---

[8] Courts around the country have recently received challenges to detention on the grounds of COVID-19 in the criminal bail context and have recognized the government's public health efforts, particularly the efforts of the Bureau of Prisons, to address the COVID-19 crisis. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020); *United States v. Gileno*, No. 3:19-cr-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020); *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *United States v. Jefferson*, No. CCB 19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States, v. Rollins*, Nos. 19-CR-34S, 11-CR-251S, 2020 WL 1482323 (W.D.N.Y. Mar. 27, 2020) (denying motion for release from custody pending sentencing and explaining that "[a]s

and staff education; conducting inmate and staff screening; putting into place testing, quarantine, and isolation procedures in accordance with BOP policy and CDC guidelines; ordering enhanced cleaning and medical supplies; and taking a number of other preventative measures. Additionally, FMC Devens implemented the "modified operations" directive in a number of ways to reduce the spread of COVID-19 among inmates, including: (1) "grab and go" meals for inmates, meaning that inmates are permitted to pick up pre-packaged meals at designated times, but return to their housing units in order to eat; (2) providing health services within units, and allowing only inmates from the same units, who are sheltering in place together, to be in the same area for medical visits; and (3) inmates are all provided masks and are required to wear them, or be subject to discipline, and extensive cleaning and sanitizing measures are taking place within FMC Devens. *See* Exhibits A, B.

Contrary to Petitioner's allegation, "…the Bureau of Prisons is by all objective accounts responding to the COVID-19 pandemic as any reasonable observer could expect under the circumstances to prevent infectious outbreak, protect inmate health, and preserve internal order – all legitimate government aims." *United States v. Villegas,* 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020) (slip op). The condition complained of here is not the existence of COVID-19, which is not under the control of the BOP, or of FMC Devens. Rather, the condition complained of is the precautions FMC Devens has taken to reduce exposure to or the spread of COVID-19. FMC Devens is acutely aware of the risk that COVID-19 poses to its inmate population and to the

---

serious as it is, the outbreak of COVID-19 simply does not override the statutory detention provisions above"); *United States v. Passley,* 2020 WL 1815834, at *4 (E.D.N.Y. Apr. 9, 2020) (balancing defendant's risk of flight and health concerns and concluding COVID-19 is not a sufficiently compelling circumstance to justify release); *Mell v. United States,* No. 3:20-cv-2277 (BRM), 2020 WL 1852384, at *1 (D. New Jersey Apr. 13, 2020).

public at large, and has taken substantial efforts to prevent the introduction and spread of the virus in the institution. *See* Exhibits A, B.

"Plaintiffs do not cite to authority, and the court is aware of none, under which the fact of detention itself becomes an 'excessive' condition solely due to the risk of a communicable disease outbreak — even one as serious as COVID-19." *Dawson v. Asher*, No. C20-0409 JRL-MAT, 2020 WL 1304557, at *2 (W.D. Wash March 19, 2020). Similarly, in *United States v. Desage*, No. 2:13-cr-00039-JAD-VCF, 2020 WL 1904584, at *3 (D. Nev. Apr. 17, 2020), defendant alleged that the BOP's COVID-19 protections for inmates were insufficient, and that he was at risk of being exposed to the life-threatening virus. In denying release, the court found such claims to be "hyperbole," and that the information the government provided about its plan, procedures and practices in general demonstrated a lack of deliberate indifference. *Id.* Furthermore, in evaluating the very same claims that Petitioner makes with regard to conditions at FMC Devens, one District of Massachusetts judge has found Respondent's actions to be "extraordinary,[9]" while another district judge found, in denying petitioners' motion for injunctive relief, that the "affirmative steps may or may not be the best possible response to the threat of COVID-19 within the institution, but they undermine an argument that [Respondent has] been actionably deliberately indifferent to the health risks of inmates." *Grinis*, 20-cv-10738-GAO (D. Mass. May 8, 2020), ECF No. 45 at 5.

In reviewing Petitioner's claims, and considering the actions that Respondent has taken to combat COVID-19 and to keep inmates and staff alike from contracting the virus, this Court must dismiss the Petition. Respondent is taking aggressive measures to combat the spread of COVID-

---

[9] *United States v. Kellem,* Case No. 1:19-cr-10277-WGY, ECF No. 33 (D. Mass. May 6, 2020) (minute order denying motion to reduce sentence in light of defendant's medical condition "and the extraordinary efforts undertaken at Devens to address COVID-19 concerns, above and beyond those prevalent in the federal prison system generally …").

19, and care for inmates who contract the disease. While Petitioner may ultimately disagree with the measures taken by Respondent to protect and treat inmate health and safety while also carrying out BOP's mission to effectuate criminal sentences imposed by federal courts, a difference of medical judgment does not constitute a claim for relief. *See Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014) (holding that a "mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation"). To be sure, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). A prisoner must prove more than "an inadvertent failure to provide adequate medical care," *Estelle*, 429 U.S. at 105, or a mere "disagreement[ ] between [himself] and [his] doctors about the proper course of [his] medical treatment," *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014) (quoting *Watson v. Caton,* 984 F.2d 537, 540 (1st Cir.1993)). Regarding the latter, it is well established that the Eighth Amendment "does not impose upon prison administrators a duty to provide care ... of the prisoner's choosing." *Id.* at 82 (citing *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)).

For these reasons, it is beyond the purview of this Court to second-guess Respondent's judgment, and the medical judgments made within the BOP, or for this Court to delve within the daily operation of the BOP. In light of all of the measure taken by the BOP, and by FMC Devens in particular, Petitioner fails to state a claim upon which relief may be granted. Without an adequate constitutional violation supported by the pleadings, Petitioner's Petition, in its entirety, should be dismissed.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Rayford A. Farquhar*
Rayford A. Farquhar
Assistant United States Attorneys
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
Dated: June 2, 2020    Rayford.Farquhar@usdoj.gov

## CERTIFICATE OF SERVICE

    I, Rayford A. Farquhar, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by First Class Mail.

*/s/ Rayford A. Farquhar*
Rayford A. Farquhar
Dated: June 2, 2020    Assistant United States Attorney